IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Perris, | ) | CASE NO.: 1:11 CV 2337 |
| | ) | |
| Plaintiffs, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| Cuyahoga County Board of Developmental Disabilities, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Motion of Defendant Cuyahoga County Board of Developmental Disabilities ("CCBDD") for summary judgment. (ECF #46). For the reasons that follow, Defendant's Motion for Summary Judgment (ECF #46) is granted.

**FACTS**

Plaintiff Antonia Perris came to the United States with her family from Greece in 1970 when she was 18 years old. (Perris Dep. At 7-8) Ms. Perris began working for the CCBDD on a part-time basis in 1993 and was hired as a full-time Classroom Aid in 1994. (Id. at 12-13). In 1995, Plaintiff was promoted to the position of classroom assistant in a center based environment and remained in that position until her layoff following the 2008/2009 school year. As a classroom assistant, Plaintiff was a member of the ACCESS union. (Id. at 15-16) During the 2008/2009 school year it became clear that CCBDD would need to layoff employees in Plaintiff's job category–classroom assistant. (Yoo Dep. at 26-27) While Defendant states that prior to the last day of the 2008/2009 school year, Christina Yoo, CCBDD Employment Manager, met with Plaintiff and the other classroom assistants in a group setting to discuss the

layoff, procedures while on layoff, and potential opportunities for future employment, Plaintiff contends that classroom assistants faced uncertainty at the end of the 2008/2009 school year on whether CCBDD would retain them in their positions.[1]

Plaintiff went to Greece in the summer after the 2008/2009 school year to be with her daughter during the daughter's difficult pregnancy. Plaintiff states that she bought a plane ticket that would allow her to return to the United States at a moment's notice and provided oral and written notice to Ms. Yoo, Ms Bajorek, the school principal, and Mr. McCone, her ACCESS union president, that she would be traveling to Greece and how to contact her regarding any job related matters. (McCrone Dep. at 32) Plaintiff also asked her niece, Maryann Poulos, to check her mail in the event that the post office delivered any mail to her home address pertaining to her job status. (Poulos Dep. at 30).

Plaintiff asserts that Ms. Yoo sent a certified letter to Ms. Perris' home address on July 12, 2009, one day after Ms. Perris left for Greece. The letter apparently contained CCBDD's official notice of Plaintiff's layoff status and a notice that Ms. Perris would have seven days to respond to preserve and protect her employment lay off status for future job openings. Plaintiff's niece missed delivery of the letter and attempted to track it down. After learning that it had come from CCBDD, Ms. Poulos called CCBDD and talked to Ms. Yoo. After explaining that her Aunt was in Greece and had missed the letter, Ms. Poulos asserts that Ms. Yoo said "if she can afford to vacation in Greece, she must not need the job." (Poulos Dep. at 32). Ms. Poulos says that she told Ms. Yoo that Plaintiff went to take care of her daughter and that Ms. Yoo said that

---

[1] None of the cites to deposition transcripts by either side supports these statements. Support may exist somewhere in the transcripts, however the Court is not prepared to comb the transcripts for cites that should have been checked by counsel.

2

there are "Americans here . . . needing work and waiting and ready to start working the next day." (Id. at 33) Ms. Poulos countered that Plaintiff had paid for an airline ticket that would permit her to return in 3 days if necessary. (Id.) Ms. Yoo denies making these statements. (Yoo Dep. at 61)

Ms. Perris returned from Greece in August 2009 and actively applied for CCBDD available advertised job positions for which she was qualified. (Perris Dep. at 25, 29-30) As Employment Manager, Ms. Yoo received the applications and would review the resumes, letters of interest, check for eligibility and decide which of them to send out to managers of jobs that have job openings. (McCone Dep. at 44-45, Yoo Dep. at 8.) The hiring managers decided who to hire from among the applications forwarded to them by Ms. Yoo. (Yoo Dep. at 11). Ms. Perris applied for jobs in the Adult Services and Transportation departments. No positions in either department were covered by Plaintiff's union contract as a classroom assistant, and thus she had no seniority rights or recall rights to positions in those departments. (Perris Dep. at 32-33). Ms. Yoo sent an email at some point in which she asserts that "all administrators who have jobs open for which Antonia has applied have received all of her contact information and the letters of reference that administrators would have written on her behalf." (Yoo Dep. at 68.) Ms. Perris also asserts that Defendant reclassified the position of another laid off classroom assistant Dezarae Albert, who had lower seniority than Plaintiff, to "substitute" even though the job function was the same, in order to bypass the Union seniority list and hire Ms. Albert for a full - time position over Plaintiff. The substitute position that Ms. Albert was given paid a lower wage per hour than the classroom assistant position and was not under the ACCESS bargaining unit contract. Defendant counters that all of the laid off classroom

3

assistants, including Plaintiff, were offered substitute positions and that Plaintiff declined the substitute position.

In October 2009, the Plaintiff and her attorney notified the CCBDD of the allegedly discriminatory treatment she had received from the Human Resources Department and requested a meeting to discuss the grievances. A list of the Plaintiff's grievances against Ms. Yoo, Union president Mr. McCrone and other CCBDD employees is attached as Exhibit 3 to Defendant's Motion for Summary Judgment and includes in part, assertions that Ms. Yoo was not forwarding her applications to various hiring managers, intentionally acted to prevent Plaintiff from gaining employment, and intentionally failed to provide confirmation of receipt of employment applications to conceal their existence. Plaintiff accused Mr. McCrone of failing to perform his duties as president of the Union by taking sides with the employer at the expense of a union member. Plaintiff asserts that following the informal grievance conference, CCBDD took no investigatory action pertaining to Plaintiff's allegations and did not follow up with any report of its findings. Defendant takes Plaintiff to task in its Motion to Strike for failing to support many of her allegations, including her claim that Defendant failed to investigate or follow up with its findings. (ECF #52 at 2). However, Defendant takes the same path, by asserting without cite to any evidence that "the allegations in Defendant's Exhibit 2 (actually it is attached as Exhibit 3) have no basis in fact. . .and CCBDD responded that it had investigated the allegations and found no signs of wrongdoing." (ECF #46 at 7)[2]

---

[2]

The Court found the recitation by both parties of the facts and time line in this action to be needlessly confusing. The deposition transcripts ramble and often do not support the statement that they are cited for. Further, the briefs skip back and forth in time, making it difficult for the Court to establish a coherent time line. The Court is convinced that even reading the full transcripts of each deposition would not be particularly helpful in this

In December 2009, a temporary vacancy opened at the William Patrick Day facility that would last more than three months, and thus required CCBDD to recall a laid off classroom assistant. (Yoo Dep. at 85) As the most senior classroom assistant on the recall list, Plaintiff was offered the temporary assignment. (Id.) The temporary position started on December 7, 2009 and expired on March 31, 2010, although Plaintiff hoped to be retained longer or for another position to open. (Perris Dep. at 124).

Among Plaintiff's duties in her temporary assignment at William Patrick Day was the one-on-one work with a particular child who had aggressive behavioral problems and had been involved in more than one incident where the student injured another child or staff member. On February 12, 2010, an incident occurred involving an injury to a child by the aggressive child who was under the one-on-one supervision of Plaintiff. From the random cites of the parties to various deposition transcripts, it appears that the incident may have initially been reported as an "UI" or unusual incident but was later classified on February 16, 2010 as an "MUI" or a major unusual incident. Plaintiff was placed on paid administrative leave while the investigation of the MUI was conducted. Mr. McLaughlin, CCBDD Director of Human Resources stated that the incident was initially reported not knowing what the result would be. (McLaughlin Dep. at 38) The MUI department contacted the Northeast Ohio Network ("NEON") to conduct the investigation. During her paid administrative leave, Plaintiff was paid her full salary and benefits. Plaintiff remained on administrative leave until February 26, 2010. Upon her return she continued to work as a classroom assistant but did not work with the child involved in the

---

instance in understanding the events and actions at issue here. It is the parties' responsibility to organize the evidence cohesively, and if the deposition transcripts are not very useful, organized affidavits would have been useful.

February 12, 2010 incident. The temporary contract ended on April 1, 2010, and Plaintiff was returned to layoff status with the CCBDD having her recall rights extended 61 days as a result of her temporary contract. CCBDD extended Plaintiff's health benefits 30 days at the end of her contract as a favor to her. (Perris Dep. 125-126)

On April 7, 2010, Plaintiff was notified that NEON had found that the allegations of neglect against her were substantiated. However, before any discipline could take place, Plaintiff was entitled to a hearing, called a Loudermill hearing. A hearing was scheduled for May 10, 2010, but was cancelled by the CCBDD because Plaintiff was back on layoff status and the only discipline that was being recommended by CCBDD was a one-day suspension. (McLaughlin Dep. at 64).

Plaintiff continued to apply for positions with the CCBDD, in fact, because she believed her applications were being thrown away, she filed many applications for the same positions. On February 21, 2011, Plaintiff received notification that she was no longer on lay-off status. She filed her complaint with the EEOC in April 2011 and filed this action on October 31, 2011.

## STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  The court will view the summary judgment motion in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citations omitted).  In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."  *Id*. at 252.  However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.  The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox v. Kentucky Dep't*

7

*of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Fed. R. Civ. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

8

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## **ANALYSIS**

Defendant asserts that it is entitled to summary judgment on Plaintiff's claims because they are barred by the applicable limitations period. Further, even if some claims are timely, Defendant argues that Plaintiff cannot prove a prima facie case of discrimination or retaliation.

Moving first to Defendant's limitations argument, Defendant asserts that the limitations period has expired for any of Plaintiff's claims occurring prior to June 9, 2010. Under Title VII, a complainant must file a charge with the EEOC within 180 days of the alleged discriminatory conduct, or 300 days if the plaintiff notifies a parallel state agency of her charge. 42 U.S.C. § 2000e-5; 29 U.S.C. § 626(d)(1). Plaintiff filed her charge of discrimination with the EEOC and the Ohio Civil Rights Commission on April 5, 2011. (ECF #46, Ex. 1) Thus, Defendant asserts that the Court cannot consider any claims of alleged discrimination occurring before June 9,

2010, which is 300 days prior to Plaintiff's EEOC filing. See *Hout v. City of Mansfield, Ohio*, 550 F.Supp.2d 701, 718-19 (N.D. Ohio 2008) ("Pursuant to *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108–09, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), . . . the Court determines the Plaintiffs may file suit on events that fall outside the 300–day limitation period for filing a charge with the EEOC only for events alleging "hostile work environment claims." *Id.* at 110, 122 S.Ct. 2061." However, "For Title VII actions which are construed as "discrete discriminatory acts" such as "termination, failure to promote, denial of transfer, or refusal to hire," each of which "starts a new clock for filing charges alleging that act," the Court will exercise the 300–day statute of limitations from the date of Plaintiffs' filing with the EEOC. *Morgan*, 536 U.S. at 113–14, 122 S.Ct. 2061.") Defendant asserts that the situation here falls squarely within the parameters of *Hout* and *Morgan* as Plaintiff's claims are based upon discrete discriminatory acts such as Defendant's failure to re-hire her. As such, any of Plaintiff's claims regarding the failure to hire, the alleged statements of Ms. Yoo, the offer of a temporary contract, Plaintiff's placement on paid administrative leave, or the failure to conduct a Loudermill hearing following the February 12, 2010 incident occurred before June 9, 2010, and are barred.

Plaintiff counters that the continuing violations doctrine exception to the three hundred day statute of limitations is applicable in this case. Plaintiff alleges that the final discriminatory act against Plaintiff, removing her from the lay-off status, occurred on February 21, 2011 and was within the 300 day limitation period.  That act constituted the end of a continuous series of violations that date from July 6, 2009 through February 21, 2011. Thus, Plaintiff asserts, "where there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period."

10

*Haithcock v. Frank*, 958 F.2d 671, 677 (6th Cir. 1992).

Plaintiff's argument ignores the fact that the Supreme Court abrogated the continuing violation theory, outside the context of hostile work environment harassment claims in *Morgan*, *supra*, 536 U.S. 101, 122.  *Morgan* overturns prior Sixth Circuit law, addressing serial violations. Following *Morgan* "Plaintiffs are now precluded from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) Accordingly, the continuing violation exception invoked by Plaintiff is no longer viable.

However, a second category of continuing violations, involving a longstanding and demonstrable policy of discrimination, is not implicated by *Morgan* and remains viable.  *Id*. at 268. To establish this category of continuing violation, "a [plaintiff] must demonstrate something more than the existence of discriminatory treatment in his case....The preponderance of the evidence must establish that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure." *Sharpe*, 319 F.3d at 268-69(citations omitted).

Plaintiff has not argued or established any proof in this record that Defendant had a long standing and demonstrable policy of discrimination against Greeks[3], thus, the lone remaining viable prong of the continuing violation exception is not applicable in this case. As such, all of

---

[3]

Indeed, Defendant points to the testimony of former CCBDD employees who were Greek, including Plaintiff's nephew Nick Papadorotheou, who said that he did not detect any hostility or problems with Ms. Yoo because he was Greek and Maryann Poulos, Plaintiff's niece, who testified that CCBDD had always treated her fairly when she worked there. (Papadorotheou Dep. at 26; Poulos Dep. at 14.)

11

Plaintiff's claims of discrimination or retaliation occurring prior to June 9, 2010 are outside of the 300 day limitation period and are time barred.

The only instances of alleged discrimination or retaliation that Plaintiff claims occurred after June 9, 2010 is Plaintiff's removal from the lay-off or recall list on February 21, 2011. However, Plaintiff does not offer any evidence that her removal from the lay-off list is an act of discrimination or retaliation. Defendant asserts that Plaintiff's "removal from the recall list was entirely consistent with the ACCESS collective bargaining agreement and was consistent with CCBDD's past practice." (ECF #53 at p.5) In support of that assertion, Defendant cites Ms. Yoo's letter to Plaintiff dated March 31, 2010, which informed Plaintiff that she would be placed back on the recall list on April 1, 2010 in accordance with the ACCESS collective bargaining agreement and that her time on the recall list would be extended 61 days, the amount of time she worked in the temporary position. (ECF #50, Ex.D) While Ms. Yoo's letter did not state when Plaintiff would be removed from the recall list under the term's of the collective bargaining agreement, it gives some notice that Plaintiff's time on the recall list will be over at some point in time as provided in the collective bargaining agreement. However, as it is Plaintiff's initial burden to demonstrate that her removal from the recall list was an adverse action and not merely an expected occurrence as provided by the collective bargaining agreement, she has failed to set forth a prima facie case of discrimination or retaliation based upon her removal from the recall list. As such, Defendant is entitled to summary judgment with respect to Plaintiff's claim of discrimination or retaliation involving her removal from the recall list.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF #46) is granted.

                                                   _/s/Donald C. Nugent_
                                                   DONALD C. NUGENT
                                                   UNITED STATES DISTRICT JUDGE

DATED:  December 11, 2013